**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 27, 2012

Lyle W. Cayce
Clerk

No. 11-60550

WILMER ALBERTO GARCIA CARIAS,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Wilmer Alberto Garcia-Carias was removed from the United States in 2005. In December 2010, Garcia filed a motion to reopen with the Immigration Court. The following month, the Immigration Judge denied Garcia's motion, finding that, under the Attorney General's departure regulation, he lacked "jurisdiction to grant [Garcia's motion] as [Garcia] ha[d] been removed from the United States." On appeal, the Board of Immigration Appeals affirmed the Immigration Judge's decision and, in doing so, agreed with his analysis. Garcia subsequently filed a petition for review with this court. For the following reasons, we grant his petition.

No. 11-60550

## I.

## A.

Wilmer Alberto Garcia-Carias was born in Honduras and was admitted to the United States as a lawful permanent resident on May 28, 1993.  After being admitted to the United States, Garcia and his family resided in Louisiana.  In November 2002, Garcia was stopped for a traffic violation, arrested, and subsequently charged with possession of ecstasy.  During April of the following year, Garcia pleaded guilty to violating La. Rev. Stat. Ann. § 40:966(C), which provides that it is unlawful for a person to "knowingly and intentionally possess a controlled dangerous substance[.]"  Garcia was sentenced to "imprisonment at hard labor for a term of two years," but received a suspended sentence, was placed on probation for two years, and was ordered to pay fees and costs.  Under Louisiana law, Garcia's offense is considered a felony because he was sentenced to a term of imprisonment of two years at hard labor.  *See* La. Code. Crim. Proc. art. 933(3) ("'Felony' means an offense that may be punished by death or by imprisonment at hard labor.").

On July 25, 2005, Garcia received a pardon for this conviction under Louisiana's first offender pardon statute.

## B.

Three months before receiving his pardon, Garcia was served with a Notice to Appear charging him with being removable for having been convicted of possession of a controlled substance and an aggravated felony. During a May 31, 2005 hearing, Garcia admitted the allegations in the NTA.  The Immigration Judge sustained the charges of removability and issued an order of removal against Garcia.

Garcia appealed the Immigration Judge's decision to the Board a month after the hearing.  Two weeks after filing his appeal, Garcia submitted a motion to withdraw his appeal.  On July 27, 2005, the Board acknowledged Garcia's

withdrawal of his appeal and returned his case to the Immigration Judge without further action. Garcia was removed from the United States in November 2005, and currently resides in Honduras.

## C.

About a year after Garcia was removed, the Supreme Court decided *Lopez v. Gonzales*, 549 U.S. 47 (2006). In *Lopez*, the petitioner, a legal permanent resident, was convicted in state court of aiding and abetting another person's possession of cocaine. 549 U.S. at 51. After his release, removal proceedings were initiated against Lopez on grounds similar to those in Garcia's case: a conviction involving a controlled substance that was also considered an aggravated felony. *Id.* Lopez's challenge to the conclusion that his state conviction was an aggravated felony for immigration purposes was rejected by the Board and the Eighth Circuit. *Id.* at 52.

In reversing, the Supreme Court recognized that the Immigration and Nationality Act made Lopez "guilty of an aggravated felony if he has been convicted of 'illicit trafficking in a controlled substance . . . including,' but not limited to, 'a drug trafficking crime[.]'" *Id.* at 52-53. Importantly, the Court stated that a "drug trafficking crime" is defined by statute as any felony punishable under the federal Controlled Substances Act. *Id.* at 53. In making these observations, the Court also noted that mere possession is not a felony under the Controlled Substances Act. *Id.* It then proceeded to hold that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Id.* at 60. Based on this holding, the Court reversed the Eighth Circuit's judgment. *Id.*

Close to four years after *Lopez* was decided, one of Garcia's relatives visited him from the United States. This relative encouraged Garcia to research his immigration case with the hope that Garcia would discover a way to legally

No. 11-60550

return to the United States. Garcia followed this advice and came across an article about *Lopez* on the internet in October 2010. While he did not understand the article in its entirety, he did draw parallels between his case and the facts in *Lopez*. He then obtained pro bono counsel to help him with his case.

### D.

On December 27, 2010, Garcia filed a motion to reopen his proceedings with the Immigration Judge. In his motion, Garcia argued that, in light of *Lopez*, his criminal conviction could not be considered an aggravated felony. Because his conviction could not be considered an aggravated felony, Garcia maintained that he had established his eligibility for cancellation of removal. Additionally, Garcia contended that, despite the several years that had passed since he was removed, his motion was timely because he filed it "less than ninety days and within a reasonable time of when he first became aware of the possibility of seeking to reopen his immigration proceedings pursuant to [*Lopez*]." In the alternative, he asserted that even if the motion was time barred under the applicable statute, equitable tolling rendered the motion timely. Finally, Garcia asked the Immigration Judge to reopen his case sua sponte.

The Immigration Judge denied Garcia's motion on January 11, 2011. As the basis for the denial, the Immigration Judge stated that he lacked "jurisdiction [to] grant it as [Garcia] ha[d] been removed from the United States." The Immigration Judge relied on the Attorney General's departure regulation, 8 C.F.R. § 1003.23(b)(1), in arriving at his conclusion. Garcia appealed the denial of his motion to the Board.

The Board dismissed Garcia's appeal in July 2011. In its written decision, the Board agreed with the Immigration Judge's application of the departure regulation:

> The Immigration Judge correctly determined that he lacked jurisdiction to consider the respondent's motion because the

No. 11-60550

respondent was removed from the United States prior to the filing of the motion to reopen with the Immigration Judge. The regulations provide that a motion to reopen or reconsider "shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." 8 C.F.R. § 1003.23(b).

The Board further stated that Garcia's arguments were foreclosed by *Ovalles v. Holder*, 577 F.3d 288 (5th Cir. 2009) and *Matter of Armendarez*, 24 I. & N. Dec. 646 (BIA 2008). Garcia now appeals the Board's decision.

## II.

On appeal, Garcia has raised multiple arguments challenging the Board's decision. One of the contentions raised by Garcia asks us to grant his petition on the ground that the departure regulation is invalid under *Chevron*. Because it is dispositive, we will focus our attention on this argument.[1] Before delving into our *Chevron* analysis, we will provide some background regarding the departure regulation.

## A.

Since the Board was established in 1940, it has possessed the regulatory power to entertain motions, including motions to reopen, subject to the limitations prescribed by the Attorney General. In 1952, the Attorney General limited that power by promulgating the "departure bar," a regulation barring the Board from reviewing a motion to reopen filed by a person who has left the United States. 17 Fed. Reg. 11,469, 11,475 (Dec. 19, 1952) (codified at 8 C.F.R.

---

[1] Garcia also asks us to conclude that his motion was timely. We refuse this request. The Board did not affirm the Immigration Judge's decision on timeliness grounds. Because the timeliness of Garcia's motion was not addressed by the Board, we will refrain from reaching this issue. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *cf. I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (holding that a court of appeals is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry).

No. 11-60550

§ 6.2 (1953)).  The substance of the departure regulation remains substantially the same today.  *See* 8 C.F.R. §§ 1003.2(d), 1003.23(b)(1).[2]

In 1961, Congress created a statutory counterpart to the Board's departure regulation.  This statute prohibited federal courts from reviewing deportation and exclusion orders if the alien "has departed from the United States after the issuance of the order."  Act of Dept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651-53 (1961).  This bar to judicial review was repealed in 1996 with the passage of the Illegal Immigration Reform and Immigration Responsibility Act, Pub. L. No. 104-208, 110 Stat. 3009.  Along with repealing this bar, the Act also established a statutory right to file a motion to reopen.  In doing so, it "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien."  *Dada v. Mukasey*, 554 U.S. 1, 15 (2008).

The Act provided that an alien has a general right to file one motion to reopen proceedings.  8 U.S.C. § 1229a(c)(7)(A); *Dada*, 554 U.S. at 15.  It also detailed the required evidentiary content of a motion to reopen, the deadline for filing the motion, and exceptions to both the numerical limit of one motion and the time period for filing the motion.  8 U.S.C. § 1229a(c)(7)(A)-(C).  Notably, despite codifying various limitations on an alien's right to file a motion to reopen, Congress did not codify the departure regulation.

In implementing the Act, the Attorney General promulgated several additional regulations.  *Inspection and Expedited Removal of Aliens: Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312 (Mar. 6, 1997).  As relevant here, the Attorney General, after a notice and comment period, concluded that nothing in the Act "support[ed] reversing the long established rule that a motion to reopen cannot be made in

---

[2]    From early on, the Board construed the departure regulation as a limitation on its "jurisdiction."  *Matter of G-Y-B-*, 6 I. & N. Dec. 159, 159-60 (BIA 1954).

No. 11-60550

immigration proceedings by or on behalf of a person after that person's departure from the United States." *Id.* at 13021.

In 2000, Congress made additional revisions to the statute governing motions to reopen. *See* Violence Against Women Act of 2000, Pub. L. No. 106-386, div B, § 1506, 114 Stat. 1464, 1528 (codified at 8 U.S.C. § 1229a(c)(6)(C)(iv)). In these revisions, Congress exempted some alien victims of domestic violence from the deadlines on motions to reopen. Five years later, Congress limited this exemption by requiring that the alien victim be "physically present in the United States at the time of filing the motion." *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 825(a)(2)(F), 119 Stat. 2960, 3063-64 (Jan. 5, 2006) (codified at 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV)).

The Board subsequently addressed the validity of the departure regulation in light of the statutory changes that had taken place since 1996. While it recognized circuit case law questioning the continued validity of the departure regulation, the Board ultimately concluded that the "departure bar rule remain[ed] in full effect." *Matter of Armendarez*, 24 I. & N. Dec. at 660.

As it relates to motions filed before the Immigration Judge, the departure regulation presently reads as follows:

> A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.

8 C.F.R. § 1003.23(b)(1). A substantially similar regulation limits an alien's ability to file a motion to reopen before the Board. *See* 8 C.F.R. § 1003.2(d).

No. 11-60550

Together, these separate regulations constitute what has been referred to as the "departure bar" or "departure regulation."

With this background in mind, we now turn to considering the validity of the departure regulation under *Chevron*.

**B.**

We review the Board's findings of fact for substantial evidence and its legal determinations de novo. *Khalid v. Holder*, 655 F.3d 363, 366 (5th Cir. 2011) (citation omitted). As to its interpretation of immigration statutes, we defer to the Board to the extent prescribed by the two-step analysis set forth in *Chevron*. *Id.* (citation omitted).

Under *Chevron*'s first step, we must determine whether the statute at issue is ambiguous. "'If the intent of Congress is clear,'—that is, the statute is unambiguous with respect to the question presented— 'the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)). To determine whether a statute is ambiguous, we must employ the traditional tools of statutory interpretation. *Id.* (citation omitted). "Chief among these, of course, is the 'plain language of the statute.'" *Id.* (quoting *In re Dale*, 582 F.3d 568, 573 (5th Cir. 2009)).

"At the same time, the Supreme Court has cautioned that the statute must be read as a whole: 'In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation.'" *Id.* at 366-67 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000)). "Thus, a statutory provision cannot be read in isolation, but necessarily derives meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole." *Id.* at 367.

No. 11-60550

If a provision is ambiguous as to the question presented, the analysis proceeds to *Chevron*'s second step, which asks "whether the agency's answer is based on a permissible construction of the statute." *Id.* (citation omitted). In considering this second step, we may evaluate "'only whether the decision is arbitrary, capricious, or manifestly contrary' to the statute, and may not substitute our own judgment 'for a reasonable alternative formulated by the [Board].'" *Id.* (quoting *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005)).

## C.

Going no further than *Chevron*'s first step, we conclude that Section 1229a(c)(7) unambiguously gives aliens a right to file a motion to reopen regardless of whether they have left the United States. Three reasons support this conclusion.

First, the statutory text conferring a right to file a motion to reopen plainly does not place any geographic restrictions on its exercise. By statute, an alien has a general right to file one motion to reopen proceedings. 8 U.S.C. § 1229a(c)(7); *Dada*, 554 U.S. at 15 (stating that Section 1229a(c)(7) "is plain insofar as it guarantees to each alien the right to file one motion to reopen proceedings under this section"). The statute specifically states the following: "An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv)." 8 U.S.C. § 1229a(c)(7)(A). By its clear terms, the statute does not distinguish between those aliens who are abroad and those who remain in the United States–the unmodified "alien" captures both. Congress could have, but did not, distinguish between the two classes of aliens in creating this right. Under our reading, the statute is facially unambiguous. Because the statute is facially unambiguous, we will adhere to its plain meaning. *See Cheshire v. Comm'r*, 282 F.3d 326, 336-37 (5th Cir. 2002)

9

("Unless the text of a statute is ambiguous on its face, this court adheres to that statute's plain meaning."). Giving the statute its plain meaning, we conclude that an alien's ability to exercise his statutory right to file a motion to reopen is not contingent upon his presence in the United States.

Second, the statutory limitations placed on the exercise of the right to file a motion to reopen provide contextual support to Section 1229a(c)(7)(A)'s plain meaning. As stated earlier, the statute limits the use of this motion by imposing evidentiary requirements and time limitations. *See* 8 U.S.C. 1229a(c)(7)(B)-(C). The fact that Congress created limitations on the exercise of the motion to reopen, yet did not place a geographic restriction, supports a reading of Section 1229a(c)(7)(A) that does not deny departed aliens their right to file a motion to reopen. *Cf. United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").

Third, Congress's requirement that domestic abuse victims physically remain in the United States in order to file out-of-time motions to reopen also buttresses our interpretation of the statute. The existence of a physical presence requirement in close proximity to the textual language at issue supports the conclusion that Congress did not condition the right to file a motion to reopen on an alien's presence in the United States. Indeed, as the Supreme Court has recognized, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and citation omitted). Moreover, an interpretation of the statute that would impose a general physical presence requirement would effectively read the aforementioned provision regarding domestic abuse victims out of the statute.

No. 11-60550

Such a reading would run afoul of basic principles of statutory interpretation. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (stating that it is a "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant").

In sum, we hold that the Board's application of the departure regulation to statutory motions to reopen is invalid under *Chevron*'s first step as the statute plainly does not impose a general physical presence requirement. This conclusion is consistent with the decisions of our sister circuits that have addressed this specific issue.[3] *See Lin v. U.S. Att'y Gen.,* 681 F.3d 1236, 1241 (11th Cir. May 23, 2011) (holding that "the plain language of the statute, the statutory structure, and the amendment scheme all point to one conclusion: IIRIRA guarantees an alien the right to file one motion to reopen, and the departure bar impermissibly undercuts that right"); *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 818 (10th Cir. Jan. 30, 2012) (en banc) (concluding that "[b]ecause the post-departure bar regulation conflicts with Congress' clear intent, it cannot survive step one of the *Chevron* analysis"); *Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010) (deciding the case on *Chevron*'s first step and concluding that the departure bar cannot be applied to petitioners who have been involuntarily removed from the United States); *William v. Gonzales*, 499 F.3d 329, 333 (4th Cir. 2007) (holding that Section 1229a(c)(7)(A) "clearly and unambiguously grants an alien the right to file one motion to reopen, regardless of whether he is present in the United States when the motion is filed"); *cf.*

---

[3] The Sixth and Seventh Circuits have also granted petitions for review challenging the departure regulation, but on different grounds. Specifically, both circuits concluded that the Board's jurisdictional interpretation of the regulation was improper in light of the Supreme Court's recent efforts to clarify the distinction between jurisdictional and other legal rules. *See Pruidze v. Holder*, 632 F.3d 234 (6th Cir. 2011); *Marin-Rodriguez v. Holder*, 612 F.3d 591 (7th Cir. 2010).

No. 11-60550

*Prestol Espinal v. Att'y Gen.*, 653 F.3d 213 (3d Cir. 2011) (in the context of statutorily authorized motions for reconsideration, holding that the "post-departure bar regulation conflicts with Congress' clear intent for several reasons"). The uniform alignment of other circuits that have addressed this issue counsels in favor of deeming the departure regulation invalid as applied to statutory motions to reopen. *See In re Dale*, 582 F.3d at 575 n.8 (bolstering its conclusion with the "general prudential concern[] with creating unnecessary circuit splits").

One final point warrants mention. In his brief, the Attorney General contends that the departure regulation's validity is supported by our decisions in *Navarro-Miranda v. Ashcroft*, 330 F.3d 672 (5th Cir. 2003) and *Ovalles*. According to him, these two decisions foreclose a challenge to the application of the departure regulation to statutory motions to reopen. We disagree. *Navarro-Miranda* dealt with the applicability of the departure regulation in the context of the Board's exercise of its regulatory power to reopen cases sua sponte. *See* 330 F.3d at 675-76. Unlike the present case, *Navarro-Miranda* did not involve an alien's statutory right to file a motion to reopen.

*Ovalles* is also not controlling. There, we denied relief on two relevant grounds. First, we concluded that Ovalles could not avail himself of his statutory right to file a motion to reopen or for reconsideration because his motion before the Board was untimely. *Ovalles*, 577 F.3d at 296 ("Thus, because sections 1229a(c)(6) and 1229a(c)(7) of IIRIRA do not grant Ovalles the right to have his facially and concededly untimely motion heard by the BIA, he cannot rely on those statutory provisions as a basis for contending that the BIA was required to give sua sponte consideration to the merits of his July 27, 2007 motion to reconsider or reopen its March 2004 decision."). Second, relying on *Navarro-Miranda*, we concluded that the Board acted reasonably in determining

12

No. 11-60550

that the departure regulation deprived it of its regulatory power to reopen or reconsider decisions sua sponte. *Id.* at 296-97.

In short, *Navarro-Miranda* and *Ovalles* resolved the issue of the applicability of the departure regulation to the Board's regulatory power to reopen or reconsider sua sponte. Contrary to what the Attorney General suggests, however, these decisions did not speak directly to the relationship between the departure regulation and an alien's statutory right to file a motion to reopen. Given the fundamental difference between the regulatory sua sponte power and the aforementioned statutory right, we conclude that *Navarro-Miranda* and *Ovalles* do not govern our consideration of whether the departure regulation can limit Garcia's right to file a statutory motion to reopen.

Put simply, Garcia's statutory right to file a motion to reopen is not trumped by the Board's departure regulation. In so holding, we join four other circuits that have arrived at this same conclusion. Given our narrow procedural ruling, nothing in this opinion should be read as commenting on any substantive claim Garcia may present on remand.

**III.**

For these reasons, we GRANT Garcia's petition and REMAND to the Board for proceedings consistent with this opinion.

13

No. 11-60550

Harold R. DeMoss, Jr., Circuit Judge, dissenting:

The majority holds that the "departure bar," a decades-old regulation currently codified at 8 C.F.R. §§ 1003.23(b)(1) and 1003.2(d), is invalid under step one of the *Chevron* analysis. For the reasons set forth by former Chief Judge Williams of the Fourth Circuit in her thorough and well-stated dissenting opinion in *William v. Gonzales*, 499 F.3d 329, 334-345 (4th Cir. 2007),[1] I respectfully dissent from my distinguished colleagues' "judicial repeal" of this long-standing rule. *Cf. Concorde Career Colls., Inc. v. Riley*, No. 92-1064-CV-W-6, 1994 WL 463951, at *3 (W.D. Mo. Aug. 24, 1994) ("Judicial repeal of a regulation is a decidedly risky business under *Chevron* . . . .").

The Attorney General's departure bar regulation has been part of our immigration law for more than fifty years and says in essence that once an alien has been deported to his home country or has otherwise departed the United States, he is no longer eligible to file a motion to reopen or reconsider his immigration proceeding. I recognize, of course, that Congress has the power to repeal any rule adopted by any administrative agency to which the rule-making power has been delegated. It is far from clear, however, that Congress has exercised that power with respect to the departure bar in this case.

**I.**

The majority identifies three grounds for its holding that Congress repealed the departure bar when it passed the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") in 1996. I address each of the majority's arguments in turn.

---

[1] The *William* case dealt with 8 C.F.R. § 1003.2(d), which applies to motions to reopen before the Board of Immigration Appeals, while the instant case relates to 8 C.F.R. § 1003.23(b)(1), which applies to motions to reopen before an Immigration Judge. That difference, however, has no affect on the foregoing analysis. Indeed, each of the cases cited by the majority as "decisions of our sister circuits that have addressed this specific issue," relate to 8 C.F.R. § 1003.2(d), not 8 C.F.R. § 1003.23(b)(1).

14

No. 11-60550

## A.

The majority first argues that the IIRIRA conflicts with the departure bar because it provides that "[a]n alien may file one motion to reopen proceedings under this section." 8 U.S.C. § 1229a(c)(7)(A). According to the majority, this language makes clear that "an alien's ability to exercise his statutory right to file a motion to reopen is not contingent upon his presence in the United States." There is no question, however, that "§ 1229a(c)(7)(A) does not explicitly prohibit or permit motions to reopen made after departure." *William*, 499 F.3d at 336 (Williams, C.J., dissenting). "The provision simply does not speak to that question." *Id.* In other words, the statute is silent as to whether an alien may file a motion to reopen after departing the United States. If a statute is silent "with respect to the precise question at issue, we proceed to the second step of *Chevron* analysis." *U.S. Telecom Ass'n v. FCC*, 227 F.3d 450, 457 (D.C. Cir. 2000); *see also City of Arlington v. FCC*, 668 F.3d 229, 255 n.127 (5th Cir. 2012) (quoting *U.S. Telecom*, 227 F.3d at 457-58); *Enron Oil and Gas Co. v. Lujan*, 978 F.2d 212, 215 (5th Cir. 1992) ("Because the MLA and NGPA are silent on whether the DOI may properly consider state tax reimbursements in calculating 'gross proceeds' for purposes of assessing royalties on Enron, this court must inquire only as to whether the agency's determination is a permissible interpretation" (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984)). The majority improperly inverts this rule. Rather than holding, as I would, that the statute's silence on the critical issue in this case requires proceeding to *Chevron* step two, the majority takes the statutory silence as license to stop at *Chevron* step one.

The reason given by the majority for taking Congress's failure to speak one way or the other on the departure bar in the IIRILA as an unambiguous *sub silentio* repeal of the regulation is that 8 U.S.C. § 1229a(c)(7)(A) refers to "an alien" rather than something like "an alien physically present in the United

States." "By its clear terms," the majority instructs us, "the statute does not distinguish between those aliens who are abroad and those who remain in the United States—the unmodified 'alien' captures both." The majority's reasoning misses the fact that § 1229a(c)(7)(A) speaks to a numerical limitation on the number of motions to reopen an alien may file, not to whether the alien may file a motion to reopen post-departure. *See William*, 499 F.3d at 336, 339 (Williams, C.J., dissenting). "[T]he proper point of emphasis in the statute is on the number 'one,'" not on the words "an alien." *Id.* at 336. The majority's improper reading of § 1229a(c)(7)(A) leads it to construe "an alien" as "any alien," yielding an unduly expansive interpretation of the statute. *See William*, 499 F.3d at 336 (Williams, C.J., dissenting) ("The majority's conclusion that Congress's intent to repeal 8 C.F.R § 1003.2(d) is clearly evidenced by Congress's enactment of § 1229a(c)(7)(A) alone does not sufficiently account for the realities of the pre-IIRIRA regulatory framework and imputes more meaning to the codified numerical limitation than the words of the statute can bear.").

For example, nothing in the statute specifies that the alien filing the motion to reopen must have been the subject of the proceeding in which the motion is filed. Section 5.1(c) of the Board's Practice Manual states "Only a party to a proceeding, or a party's representative, may file a motion pertaining to that proceeding. Family members, employers, and other third parties may not file a motion." BIA Practice Manual § 5.1(c) (2004). Following the majority's logic, § 5.1(c) may be invalid. To borrow the majority's phraseology, "the unmodified alien" of § 1229a(c)(7)(A) does not distinguish between the alien who is a party to the underlying proceeding and any family members, employers, or other third parties who are themselves aliens. Thus, under the majority's view, it is at least arguable that the Immigration Judge must allow an alien's foreign employer to file a motion to reopen his employee's immigration proceeding. I find it inconceivable that Congress intended to allow, much less require, this

type of third-party practice. But if we are to read "an alien" as "any alien," it seems a reasonable conclusion, which suggests the majority's reading is flawed. *See Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222 (2009) ("The inference that respondents and the dissent would draw from the silence is, in any event, implausible, as § 1326(b) is silent not only with respect to cost-benefit analysis but with respect to all potentially relevant factors. If silence here implies prohibition, then the EPA could not consider *any* factors in implementing § 1326(b)—an obvious logical impossibility.").

The majority's expansive reading of § 1229a(c)(7)(A) also ignores the statute's pre-IIRIRA origins. As both the majority and Judge Williams note, the IIRIRA codified pre-existing regulatory language that was substantially identical to § 1229a(c)(7)(A). *William*, 499 F.3d at 336 (Williams, C.J., dissenting). There is no dispute that the language of § 1229a(c)(7)(A), when it was in regulatory form, was consistent with the departure bar. According to the majority, however, the same words that were consistent with the departure bar when they were contained in a regulation became inconsistent with the departure bar when Congress used them in a statute. How the transition from regulatory to statutory status transformed the meaning of the language of § 1229a(c)(7)(A) is a mystery the majority leaves unsolved. *See William*, 499 F.3d at 334-35 (Williams, C.J., dissenting) ("Given that a nearly identical provision limiting aliens to one motion to reopen existed *before* enactment of the IIRIRA, and in the *same* regulation containing the departure bar now located in § 1003.2(d), I cannot join the majority's conclusion that § 1229a(c)(7)(A) by itself repeals the departure bar in 8 C.F.R. § 1003.2(d)." (citation omitted)).

The majority opinion provides the hint, however, that it finds "notabl[e]" that "Congress did not codify the departure regulation." It appears the majority takes Congress's decision to codify the motion to reopen but not the departure bar as evidencing an intent to prohibit the Attorney General from continuing to

enforce the departure bar.  In doing so, the majority proceeds from a false premise: that in enacting the IIRIRA and codifying the motion to reopen, Congress intended to eliminate the Attorney General's discretion as to whether to retain the departure bar.  Put another way, the majority wrongly assumes that in passing the IIRIRA, Congress had only two choices: to make the departure bar mandatory or to make it impermissible.  There is no reason to assume, however, that Congress had to either codify the departure bar (thereby eliminating the Attorney General's discretion to abandon it) or to repeal the departure bar (thereby eliminating the Attorney General's discretion to maintain it).  The most reasonable interpretation of Congress's actions is a third possibility the majority appears to dismiss out of hand: that Congress intended to leave the question of whether to retain the departure bar to the discretion of the Attorney General and did so by declining to codify the departure bar and remaining silent as to its continued application.  Indeed, this type of statutory silence is exactly how one would expect Congress to vest discretion in the Attorney General.  *See, e.g.*, *United States v. Home Concrete and Supply, LLC*, 132 S. Ct. 1836, 1843 (2012) (plurality opinion) (describing *Chevron* as stating that a "statute's silence . . . as to a particular issue means that Congress has not directly addressed the precise question at issue (thus likely delegating gap-filling power to the agency)" (internal quotations omitted))*; Entergy Corp.,* 556 U.S. at 222 (holding that "[i]t is eminently reasonable" to conclude that statute's silence "is meant to convey nothing more than a refusal to tie the agency's hands"); *Irvine Med. Ctr. v. Thompson*, 275 F.3d 823, 828 (9th Cir. 2002) (holding that agency had discretion to both adopt and later eliminate a carry-forward provision under a statute silent as to carry-forward provision, noting "While it is clear that Congress *permitted* the Secretary to implement a carry-forward provision, it is far from clear that Congress *required* such a provision"). Accordingly, the majority errs in holding that the plain meaning of

§ 1229a(c)(7)(A) eliminates the Attorney General's discretion to retain the departure bar.

## B.

The second reason given by the majority for finding that § 1229a(c)(7)(A) conflicts with the departure bar is that §§ 1229a(c)(7)(B)-(C) impose evidentiary requirements and time limitations on motions to reopen. The majority reasons that "[t]he fact that Congress created limitations on the exercise of the motion to reopen, yet did not place a geographic restriction, supports a reading of § 1229a(c)(7)(A) that does not deny departed aliens their right to file a motion to reopen." This argument collapses under its own weight. Under the majority's reasoning, but for § 1229a(c)(7)(C), which provides for a general 90-day deadline for motions to reopen, the Attorney General would be prohibited from imposing any time limitation at all. Nor can the Attorney General, under the majority's holding, continue to enforce 8 C.F.R. § 1003.2(g)(1), which provides that "[a] motion and any submission made in conjunction with a motion must be in English or accompanied by a certified English translation." The statute does not impose a language requirement on motions to reopen or the affidavits and other evidentiary materials required to be filed with the motion. Under the majority's reasoning, the fact that Congress did not impose a language requirement but did impose evidentiary and timing requirements on motions to reopen "supports a reading" of §§ 1229a(c)(7)(A)-(B) that "does not deny aliens their right to file a motion to reopen" in whatever language they choose. Indeed, under the majority's view, the fact that Congress did not elevate this regulation to statutory status, while codifying other restrictions on motions to reopon, shows that Congress intended to repeal the regulation.

Again, the fallacy in the majority's argument is that it proceeds from a false premise: that because Congress filled some gaps as to the requirements for a motion to reopen, Congress necessarily left no other gaps for the Attorney

No. 11-60550

General to fill. But this has never been the rule under *Chevron*. *See Entergy Corp.*, 556 U.S. at 223 ("[U]nder *Chevron*, that an agency is not *required* to do so does not mean that an agency is not *permitted* to do so."); *see also Home Concrete and Supply*, 132 S. Ct. at 1843 (statutory silence indicates Congress "likely delegat[ed] gap-filling power to the agency"); *Nat. Cable and Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 997 (2005) (statutory silence suggests "that the Commission has the discretion to fill the consequent statutory gap"). The case cited by the majority for its proposition, *United States v. Johnson*, 529 U.S. 53, 85 (2000), has nothing to do with *Chevron* deference. Rather, it stands for the rule that courts may not create exceptions to statutes simply to accommodate equitable considerations. But, the fact that courts should not engage in statutory gap-filling certainly does not prohibit agencies from doing so under *Chevron*. *See Brand X,* 545 U.S. at 982 ("*Chevron*'s premise is that it is for agencies, not courts, to fill statutory gaps."). Far from showing that Congress meant to drastically limit the Attorney General's discretion as to what is required of a motion to reopen, §§ 1229a(c)(7)(B)-(C) actually support the view that the proper focus of § 1229a(c)(7)(A) is not its purportedly unbounded geographic scope, but its limitation on the number of motions to reopen an alien may file. *See William*, 449 F.3d at 336 (Williams, C.J., dissenting) (finding that, in light of the 90-day deadline codified at § 1229a(c)(7)(C), "[t]he statutory context of § 1229a(c)(7) makes clear that it is just a numerical limitation—nothing more, nothing less").

## C.

The majority's third and final argument relies on a 2005 amendment to § 1229a(c)(7) that permits domestic abuse victims to file motions to reopen after the 90-day deadline, provided that they are physically within the United States when the motion is filed. According to the majority, "The physical presence requirement in close proximity to the textual language at issue supports the

conclusion that Congress did not condition the right to file a motion to reopen on the alien's presence in the United States." The majority further asserts that "an interpretation of the statute that would impose a general physical presence requirement would effectively read the [2005 amendment] out of the statute."

As an initial matter, the majority again misses the relevant inquiry. The issue in this case is not whether Congress has "condition[ed] the right to file a motion on the alien's presence in the United States" or "imposed a general physical presence requirement," but whether the *Attorney General* has *discretion* to do so under the statute. Accordingly, the question is not whether the 2005 amendment is inconsistent with a statutory provision *requiring* the departure bar, but whether it is inconsistent with the Attorney General having discretion to either retain or abandon the departure bar. If it is Congress's intention to be agnostic as to the departure bar, then the physical presence requirement does not become mere surplusage. Rather, Congress has provided for the eventuality that the Attorney General decides to abandon the departure bar, in which case the 2005 amendment will come into play. At most, the 2005 amendment shows that Congress anticipates the departure bar may cease to exist, not that Congress mandates its extinction.

Moreover, as Judge Williams notes, it is not clear that the 2005 amendment provides any insight into what Congress intended by codifying the motion to reopen. *See William*, 499 F.3d at 337 (Williams, C.J., dissenting). Section 1229a(c)(7)(A) was passed as part of the IIRIRA in 1996, the 2005 amendment was passed as part of the Violence Against Women and Department of Justice Reauthorization Act of 2005. Thus, although §§ 1229a(c)(7)(A) and 1229a(c)(7)(C)(iv)(IV) are in "close proximity" in terms of codification, they are "connected neither in time nor purpose." *William*, 499 F.3d at 337 (Williams, C.J., dissenting). For that reason, the physical presence requirement of the 2005

amendment provides, at best, little insight into whether Congress intended to repeal the departure bar via § 1229a(c)(7)(A) nine years earlier.

Indeed, the majority's reading of the congressional intent behind the 2005 amendments tells an implausible story.   According to the majority, although Congress in 2005 was clearly of the view that the departure bar was inconsistent with § 1229a(c)(7)(A), it did not amend § 1229a(c)(7)(A) to make clear that there could be no general physical presence requirement on motions to reopen, but added §1229a(c)(7)(C)(iv)(IV) on the assumption that the Attorney General would *sua sponte* reverse his consistent, decade-long interpretation of § 1229a(c)(7)(A) and find he was without discretion to impose a physical presence requirement.  Once again, the majority has it backwards.  The fact that Congress considered the issue of the alien's geographic location in 2005 and took no action to address the Attorney General's interpretation of § 1229a(c)(7)(A) shows congressional acquiescence to the departure bar, not an intent to repeal it.  *See Irvine Med. Ctr.*, 275 F.3d at 830 n.4 ("Moreover, the legislative acquiescence in the carry-over regulation is consistent with the view that Congress left the decision to the Secretary.  Since the repeal in 1988, Congress has taken *no* action to require a carry-forward provision, which weakens further the plaintiffs' contention that Congress sought to mandate a carry-forward.").

## II.

Having concluded that the statute is silent "with respect to the precise question at issue, we proceed to the second step of *Chevron* analysis."  *U.S. Telecom Ass'n*, 227 F.3d at 457.  The highly deferential standard of *Chevron* step two requires that we give controlling weight to the agency's interpretation of the statute unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.  "Once we determine that a statute is silent . . . with respect to a question at issue, we must defer to the agency's resolution of the question if the agency's interpretation is based on a permissible construction of

the statute." *City of Arlington*, 668 F.3d at 252; *see also Orellana-Monson v. Holder*, 685 F.3d 511, 520-21 (5th Cir. 2012) (noting that under *Chevron* step two, an agency interpretation "is binding as long as it is a permissible construction of the statute." (internal quotations omitted)).   An agency interpretation fails *Chevron* step two only if "it is contrary to clear congressional intent or frustrates the policy Congress sought to implement." *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010) (internal quotations omitted). "[J]udicial deference to the Executive Branch is especially appropriate in the immigration context . . . ." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). Again following Judge Williams, I find that the departure bar clears *Chevron* step two.   *William*, 499 F.3d at 342-44 (Williams, C.J., dissenting).

## A.

Appellant advances two arguments for why the "departure bar is in clear tension with the intent of the IIRIRA and the larger immigration scheme." First, Appellant argues that the departure bar renders the statutory requirement that an alien be removed within ninety days of the final order of removal, *see* 8 U.S.C. § 1231(a)(1)(A), in tension with the ninety-day deadline to file a motion to reopen. This supposed tension, however, was resolved by the Supreme Court in *Dada v. Mukasy*, 554 U.S. 1, 21 (2008). There, the Court noted that an "alien may be removed by the DHS within 90 days [of a final order of removal], even if the motion to reopen has yet to be adjudicated." *Id.* "But," the Court observed, "the alien may request a stay of the order of removal and, though the BIA has discretion to deny the motion for a stay, it may constitute an abuse of discretion for the BIA to do so where the motion states nonfrivolous grounds for reopening." *Id.* (internal citation omitted).   Accordingly, the

departure bar may be read in harmony with the 90-day deadline for motions to reopen and the 90-day deadline for mandatory removal.[2]

## B.

Appellant also argues that the IIRIRA's elimination of the post-departure bar to judicial review shows a Congressional intent "to allow post-departure adjudications while furthering its interests in increased accuracy and a streamlined deportation process." For the same reasons as Judge Williams, I do not take the repeal of the judicial departure bar as evidencing a congressional intent to eliminate the Attorney General's discretion to maintain the administrative departure bar to motions to reopen. In short, petitions for judicial review and motions to reopen are very different creatures that serve distinct purposes. *See William*, 499 F.3d at 343 (Williams, C.J., dissenting) ("A petition for review of a final order of removal represents an alien's first and only opportunity for judicial review of the merits of the order, whereas a motion to reopen seeks a *subsequent* opportunity for administrative review."); *see also id.* (noting that motions to reopen "'are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence'" and that accordingly one cannot "impute to Congress a similar intention to free the motion to reopen from the workings of the departure

---

[2] Noting that it had not considered the validity of the departure bar because the regulation had not been challenged, the *Dada* Court nonetheless suggested that "[a] more expeditious solution to the untenable conflict between the voluntary departure scheme and the motion to reopen might be to permit an alien who has departed the Untied States to pursue a motion to reopen post departure." *Dada*, 554 U.S. at 22. I take the Court's suggestion as directed to the Attorney General and Congress rather than to the lower courts. Taken as persuasive *dicta* on the issue in this case—which is how Appellant would like us to read it—the Court's statement, at best, suggests a result with no clear path to getting there. Mindful that we are bound to obey precedential holdings in favor of *dicta* suggesting a different result, I stick to the well-worn *Chevron* path and simply follow where it leads. *See United States v. Lipscomb*, 299 F.3d 303, 313 (5th Cir. 2002) ("Because *Salinas* and *Fischer* went no further than to advert in *dicta* to the mere possibility that the argument now advanced by Lipscomb might someday be favored, we are bound to adhere to *Westmoreland*'s statutory holding.").

bar, given the motion's disfavored status." (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992))). As articulated by the First Circuit, the repeal of the judicial departure bar "does not remotely support an argument that Congress also intended, implicitly, to allow post-departure petitions to reopen a closed administrative proceeding." *Pena-Muriel v. Gonzales*, 489 F.3d 438, 442 (1st Cir. 2007).

Finally, I note that had it been the intent of Congress to ensure that all challenges to final deportation orders be permitted post-departure, Congress could have, but did not, codify that requirement. Indeed, the fact that Congress took unmistakably clear action with respect to the judicial departure bar makes its silence with respect to the administrative departure bar all the more deafening. In my view, the repeal of the judicial departure bar, combined with Congress's failure to speak as to the departure bar at issue here, suggests "acquiescence to its continued functioning," not an intention to ban it. *William*, 499 F.3d at 344 (Williams, C.J., dissenting).[3]

Appellant has provided no reason why the departure bar is invalid under *Chevron* step two. I therefore respectfully dissent from the majority's decision holding the departure bar *ultra vires* under *Chevron*.[4]

---

[3] I note also that the administrative departure bar was never mentioned in the legislative history of the IIRIRA or in any committee hearings on the law. The lack of any mention of the departure bar in connection with the enactment of the IIRIRA, apart from what it says about Congress's intent, raises an issue of transparency. Assuming that one of the purposes of the IIRIRA was to repeal a half-century old regulation continually employed by the Attorneys General of eleven successive presidential administrations, should Congress not have made that clear to the public prior to enactment of the IIRIRA, so that anyone supporting the regulation could have advocated for its retention? Surely at least the Attorney General in 1996 was entitled to some opportunity to present her views on what effect repeal of the departure bar would have on the functioning of her department.

[4] As the majority points out, four other Courts of Appeals have reached the same result as the majority and none have reached the opposite result, save a divided panel of the Tenth Circuit which was subsequently reversed *en banc*. *See Contreras-Bocanegra v. Holder*, 629 F.3d 1170 (10th Cir. 2010), *rev'd en banc*, 678 F.3d 811 (10th Cir. 2012). The uniformity among the circuits masks the difficulty of this issue. *See William*, 499 F.3d at 335 (Williams,

C.J., dissenting) (noting that the case presented "a close question"). The basic issue in dispute here, how congressional silence should be interpreted in the *Chevron* analysis, is one that courts have struggled with. David M. Hasen, *The Ambiguous Basis of Judicial Deference to Administrative Rules*, 17 YALE J. ON REG. 327, 337 (2000). For that reason, I hope the Attorney General will not decline to seek review of this question in the Supreme Court solely due to the absence of a circuit split.